IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**TAMMY RUSHING,**

    **Plaintiff,**

v.                                                      Case No. 2:16-cv-02662-SHM-cgc

**SHELBY COUNTY BOARD OF EDUCATION,**

    **Defendant.**

### REPORT AND RECOMMENDATION

Before the Court, by way of Order of Reference (D.E. # 28) for hearing and report and recommendation, is Plaintiff's April 13, 2017 Motion for Temporary Restraining Order. (D.E. # 27). On September 27, 2016, Plaintiff filed her Response in opposition. (D.E. # 32). On April 18, 2017, a hearing was held on the motion with Kathleen Caldwell appearing on behalf of Plaintiff and Kenneth Walker, II and Jennifer Ervin appearing on behalf of Defendant. Having considered the motion, response, respective memoranda, arguments of counsel and the record in the case, it is recommended that the motion be DENIED.

**I.**      **Introduction**

On August 12, 2016, Plaintiff filed a Complaint alleging violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and 42 U.S.C. § 1983 ("Section 1983") for deprivation of her due process rights under the United States Constitution.

Plaintiffs' Complaint alleges that she began working for Shelby County Board of

Education ("SCS") in June 2015 as a Special Education teacher at Treadwell Middle School. (Compl. ¶ 9). Plaintiff believed that she was hired as a tenured teacher. (*Id*. ¶ 12). Plaintiff alleges that she "soon learned that her students . . . were not having their educational needs met, nor their social needs." (*Id*. ¶ 13). Plaintiff complained but felt that she received no support, that the students suffered, and that she began to be "increasingly upset," "depressed," and harassed. (*Id*. ¶¶ 13-18). By November 2015, Plaintiff alleges that she began to experience retaliation for expressing her concerns, which she found to be a "terrible situation" and "intolerable," causing her to be "devastated" and "panic-stricken." (*Id*. ¶¶ 19-23). On November 18, 2015, Plaintiff "called in sick, because she was physically sick and emotionally distraught." (*Id*. ¶ 25). Nonetheless, Plaintiff claims the retaliation continued into December 2015, causing her to take Family Medical Leave Act ("FMLA") leave from January 5, 2016 until March 1, 2016 on the advice of her doctors due to her emotional condition. (*Id*. ¶¶ 26-27).

Plaintiff alleges that she returned to work on April 1, 2016 but was sent to a new school and was not given a teaching position. (*Id*. ¶¶ 32-33). On April 29, 2016, Plaintiff alleges that she was told that, in order to continue her employment with SCS, she "would have to find another job within the district." (*Id*. ¶ 34). Plaintiff alleges that this was contrary to what had been previously represented to her when she believed she had tenure. (*Id*. ¶ 35). Plaintiff alleges that, as of the spring semester of 2016, SCS had five openings for special education teachers in the "I-Zone" schools for which she was qualified but had not offered any of those to her. (*Id*. ¶¶ 9-11, 40). Plaintiff also alleges that, at the time of the filing of the Complaint, she had not secured a teaching position for the fall semester of 2016. (*Id*. ¶ 41).

In the instant Motion, Plaintiff alleges that Defendant has since "ramped up" the "retaliation/hostile environment to an extent and intensity" that she has again had to take medical

leave for two short-term periods in February and March of 2017 and is now on FMLA leave through the end of the 2017 school year. (*Id*. ¶¶ 5-10, 15-16). Plaintiff alleges that her treating psychiatrist, Dr. Paul Neal, advised Plaintiff "not to return to the school for any reason and not to have any contact with her supervisor/principal." (*Id*. ¶ 16). Plaintiff alleges that SCS has unreasonably required extensive contact to complete FMLA paperwork and has contacted her on other employment matters, making her "tremendously upset" and making her anxiety level "practically unbearable." (*Id*. ¶¶ 17-29).

Accordingly, Plaintiff seeks a temporary restraining order to prohibit anyone from SCS from contacting her "in any way, including by telephone or email, until such time as Plaintiff's treatment provider finds she has sufficiently recovered to return from FMLA leave to her place of employment." (D.E. # 27 at 9). Absent such an order, Plaintiff believes that she will suffer immediate and irreparable harm to her health, further delaying her recovery.

Plaintiff further supported her Motion with the Affidavit of her psychiatrist, Dr. Paul J. Neal of the Christian Psychological Center, who has treated Plaintiff since February 2016 "for stress and anxiety resulting from her hostile workplace environment at Shelby County Schools." (Affidavit of Dr. Paul J. Neal ("Neal Aff.") ¶ 2, filed at D.E. #33). Dr. Neal has personally recommended numerous requests for medical leave for Plaintiff, and when he last saw Plaintiff on April 6, 2016, she was diagnosed with acute anxiety, depression and panic attacks "due to her hostile work environment." (Neal Aff. ¶¶ 3-4). At that time, Dr. Neal not only completed the medical statement for her FMLA leave, but he recommended immediate hospitalization for inpatient treatment and "advised her not to have any further contact with school, her employer or any of its employees for the duration of her medical leave." (Neal Aff. ¶ 4). Dr. Neal states that Plaintiff's condition has continued to worsen since she applied for FMLA leave "as a result of her

3

employer's continuing efforts to contact her by email and by telephone, which have resulted in heightened stress and anxiety." (Neal Aff. ¶ 5). Dr. Neal again requested that her employer "have no further contact with her until she is medically discharged from her FMLA leave" because it is a "necessary component of her treatment plan." (*Id.*) Dr. Neal stated that Plaintiff's counsel has advised that Plaintiff has been admitted to Lakeside Hospital for inpatient treatment, which he believed was the appropriate setting for her at that time. (Neal Aff. ¶ 6).

**II.     Analysis**

At the outset, Plaintiff filed the instant motion as one for a temporary restraining order ("TRO"). An application for a TRO relates to relief sought without written or oral notice to the adverse party, but a motion is properly treated as one for a preliminary injunction when the adverse party has been given notice, as is the case here. *See Gabrielle Renoir-Large v. Norma Darwin Lane*, No. 2:11-CV-0023, 2011 WL 3667424, at *1 (S.D. Ohio July 20, 2011) (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)). Accordingly, it is recommended that the instant motion be treated as one requesting a preliminary injunction, although the standard for the issuance both is generally the same. *See Justin W. Crowder v. Hamilton Cty. Sheriff's Office*, No. 1:11-cv-306, 2012 WL 1866514, at *5 (E.D. Tenn. May 22, 2012) (citation omitted)).

In determining whether the extraordinary remedy of a preliminary injunction should issue, "the purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). "The general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits." *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) (citations

omitted).

A court must consider the following four factors before issuing a preliminary injunction: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir.2002); *Leary v. Daeshner*, 228 F.3d 729, 736 (6th Cir. 2000). The moving party bears the burden of demonstrating entitlement to a preliminary injunction by proving that the "circumstances clearly demand it." *Service Employees Intern. Union Local 1 v. Husted*, 698 F.3d 341,343-344 (6th Cir. 2012) (citing *Overstreet*, 305 F.3d at 573).

First, as to the likelihood of success on the merits, the party requesting the preliminary injunction must demonstrate a substantial likelihood of success on the merits "*when the case is tried.*" *Cincinnati Elec. Corp. v. Kleppe*, 509 F.2d 1080 (6th Cir. 1975); *Garlock v. United Seal, Inc.*, 404 F.2d 256 (6th Cir. 1968) (emphasis added). Here, the allegations in Plaintiff's Motion are related to a different period from the allegations contained in her complaint. Specifically, Plaintiff's Complaint contains allegations from June 2015 until August 2016. Plaintiff's Motion contains allegations from February 2017 until April 2017, which are unpled. There is no likelihood of success on the merits in this Court when the case is tried on allegations which are not pled before the Court. *See* Fed. R. Civ. P. 8(a). Accordingly, it is recommended that this factor alone weighs so heavily against Plaintiff because she seeks relief regarding unpled allegations as to prevent the issuance of a preliminary injunction; however, the Court will continue to briefly address the remaining three factors.

With respect to whether Plaintiff will suffer irreparable harm, a plaintiff's harm from the

5

denial of a preliminary injunction is not irreparable if it is fully compensable by monetary damages. *Overstreet*, 305 F.3d at 578 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). Although the Court cannot create Plaintiff's claims for her, to the extent that Plaintiff desires to allege further Title VII or ADA retaliation, the remedy under the law is to timely plead the claims and to request any and all relief to which she may be entitled. To the extent that Plaintiff prays that the Court could issue a preliminary injunction to protect her from stress of communicating with Defendants while she is still employed by Defendants, Plaintiff has not provided any basis under the law for the no-contact injunction that she seeks. Further, Defendants have provided valid bases for instances when they may be legally required to contact Plaintiff as their employee as well as a valid basis for employee communications that are sent periodically. Plaintiff has also not set forth that there would be substantial harm to others or that a preliminary injunction would be in the public interest. Thus, it is recommended that, even if the first factor did not prevent the issuance of a preliminary injunction, the following three factors also weigh heavily against the issuance of preliminary injunctive relief.

Although it is recommended that no preliminary injunction shall issue, the Court advises Defendants to make all reasonable efforts to assist Plaintiff with the treatment plan that her psychiatrist has provided and Plaintiff to understand that certain communications may be necessary as a current employee of Defendant and as a Plaintiff pursuing a case against Defendant. It appears to the Court that, to the extent that and necessary or important communications may be relayed through Plaintiff's counsel or by representatives of Defendants' not involved in the allegations in this litigation, it would allow for Plaintiff to follow her medical treatment plan while Defendants also comply with their obligations as her employer during the course of this litigation.

### III.    Conclusion

For the reasons set forth herein, it is recommended that Plaintiff's Motion for Temporary Restraining Order be DENIED.

DATED this 12th day of May, 2017.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE SAID OBJECTIONS OR EXCEPTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**